**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROMAN CATHOLIC ARCHDIOCESE OF NEWARK, et al., | |
| Plaintiffs, | Civil Action No. 15-5647 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| CHRISTOPHER CHRISTIE, in his official capacity as Governor of New Jersey, et al., | |
| Defendants. | |

**SHIPP, District Judge**

Plaintiffs Roman Catholic Archdiocese of Newark (the "Archdiocese"), Emilio Mazza, and Dennis Flynn, Sr. (collectively, "Plaintiffs") challenge the constitutionality of Assembly Bill 3840, codified at N.J.S.A. 16:1-7.1 (2015) (the "Amendment"), which makes it illegal for the Archdiocese to sell cemetery monuments. (*See* generally Compl., ECF No. 1.) Arguing that the Amendment is unconstitutional, Plaintiffs seek to permanently enjoin Defendants Christopher Christie ("Governor Christie"), in his official capacity as Governor of New Jersey, and John Jay Hoffman, in his official capacity as Attorney General of New Jersey, (collectively, "State Defendants") from enforcing the Amendment. In the Complaint, Plaintiffs allege that the Amendment violates: (1) the Due Process Clause of the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; (3) the Contracts Clause of the Constitution; and

(4) the Privileges or Immunities Clause of the Fourteenth Amendment.[1] (*Id.*) State Defendants and Intervenor Defendant New Jersey State Funeral Directors Association, Inc. ("NJSFDA") (collectively with State Defendants, "Defendants") move to dismiss Plaintiffs' Complaint, arguing that the Complaint fails to state a claim for relief. (ECF Nos. 18, 24.)

I. **Background**

The Archdiocese operates eleven cemeteries in New Jersey on a nonprofit basis. (Compl. ¶ 23.) Its cemeteries are private and reserved for the "Catholic faithful and their families."[2] (*Id.* ¶ 26.) In 2006, the Archdiocese began its "inscription-rights program." (*Id.* ¶ 112.) Under this program, the Archdiocese's parishioners may choose to contract with the Archdiocese to obtain a monument for a burial space. (*Id.* ¶ 113.) Pursuant to these "inscription-rights contracts" the Archdiocese maintains ownership of the monuments and has a duty to install the monuments at the parishioners' burial spaces and to provide perpetual maintenance for the monuments. (*Id.* ¶¶ 113-115.) From 2006 to 2013, the Archdiocese offered the inscription-rights program for only its private family mausoleums. (*Id.* ¶ 125.) In 2013, the Archdiocese expanded its inscription-rights program to other types of monuments including headstones. (*Id.* ¶ 127.) Between 2006 and March 23, 2015, the Archdiocese entered into approximately six hundred inscription-rights contracts. (*Id.* ¶ 129.)

In 2013, John M. Burns, the head of the Monument Builders Association of New Jersey ("MBANJ"), contacted the Archdiocese to object to the expansion of the inscription-rights

---

[1] Plaintiffs concede, and the Court agrees, that the Privileges or Immunities Claim should be dismissed under the *Slaughter-House Cases*, 83 U.S. 36 (1872). (Pls.' Opp'n Br. 32 n.10, ECF No. 25.) Plaintiffs assert this claim to preserve it for appeal. (*Id.*)

[2] The Archdiocese also provides interment to a "tiny community of Coptic Christian immigrants." (Compl. ¶ 27.)

program to headstones and similar monuments. (*Id.* ¶¶ 131-33.) Thereafter, on July 19, 2013, the MBANJ sued the Archdiocese in New Jersey state court alleging that the inscription-rights program constituted a form of unfair competition. (*Id.* ¶ 140.) In April 2014, the New Jersey state court held a six-day bench trial on the MBANJ's lawsuit against the Archdiocese. (*Id.* ¶ 146.) On April 29, 2014, the state trial court found that it was not illegal for the Archdiocese to provide monuments to its parishioners pursuant to the inscription-rights program. (*Id.* ¶ 150.)

On December 18, 2014, the New Jersey Senate and Assembly passed the "Amendment", which amended the Religious Corporations Law, N.J.S.A. 16:1-1 et seq., to prohibit private religious cemeteries from, inter alia, selling monuments. (*Id.* ¶¶ 158-159, 174.) Objecting to the immediate effective date of the Amendment, Governor Christie issued a conditional veto. (*Id.* ¶ 178.) Thereafter, the Amendment's effective date was amended and Governor Christie signed the Amendment on March 23, 2015. (*Id.* ¶¶ 179-181.) The Amendment went into effect on March 23, 2016. (*Id.* ¶ 180.)

Importantly, the Amendment prohibits private religious cemeteries from:

(1) "ownership, manufacture, installation, sale, creation, inscription, provision[,] or conveyance, in any form, of memorials";
(2) "ownership, manufacture, installation, sale, creation, provision[,] or conveyance, in any form, of vaults, including vaults installed in a grave before or after the sale and including vaults joined with each other in the ground"; and
(3) "ownership, manufacture, installation, sale, creation, provision[,] or conveyance, in any form, of a mausoleum intended for private use, which shall not include a mausoleum built for use by or sale to the general public membership of a religious organization."

(*Id.* ¶ 160.)

## II. Standard of Review

When considering a motion to dismiss for failure to state a claim, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Last, once the well-pleaded facts have been identified and the conclusory allegations disregarded, a court must determine whether the "facts alleged in the complaint are sufficient to show the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint must contain sufficient facts to "put the defendant on notice of the nature of the plaintiff's claim." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n.18 (3d Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). It is a defendant's burden to show that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III. Analysis

### A. Due Process and Equal Protection Clause Claims

"[U]nder the Due Process Clause there is a liberty interest in the right of an individual to pursue a chosen occupation." *Casket Royale, Inc. v. Mississippi*, 124 F. Supp. 2d 434, 437 (S.D. Miss. 2000) (citing *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). "While this right is subject to regulation by the [S]tate of [New Jersey], any

4

such regulation must be 'rationally related to a legitimate government interest.'" *Casket Royale, Inc.*, 124 F. Supp. 2d at 437 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)). Thus, to state a claim for a violation of the due process clause, Plaintiffs must allege that the Amendment: (1) has an illegitimate governmental purpose; or (2) there is no rational relationship between the Amendment's legitimate purpose and the means chosen by the State to accomplish that purpose. *See Sammon v. N.J. Bd. of Medical Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995) ("Where rational basis review is appropriate, a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature rationally could conclude was served by the statute."). Furthermore, given that Plaintiffs do not allege that they are in a suspect class or that a fundamental right is involved, the analysis of their Equal Protection Clause claim is essentially the same as the Due Process Clause analysis, i.e. whether "there is no rational relationship between the disparity of treatment and some legitimate government purpose." *See Malmed v. Thornburg*, 621 F.2d 565, 569 (3d Cir. 1980) ("In reviewing a state statute or constitutional provision under the due process or equal protection clause, a court must determine if the provision rationally furthers any legitimate state objective.").

In the Complaint, Plaintiffs allege that the Amendment "is solely intended to prevent private religious cemeteries, such as those operated by the Archdiocese, from earning money from consumers who have traditionally been customers of monument dealers or funeral homes" and that this economic protectionism is not a legitimate government interest. (Compl. ¶¶ 176, 240.) In its motion to dismiss, State Defendants, however, assert that:

> The Legislature could have rationally concluded that the [Amendment] furthers the legitimate state interest in (1) protecting consumers who must venture into the potentially exploitative market for funeral services from explicit and more subtle efforts to condition the purchase of a burial plot with a sale of a monument; and (2) maintaining a competitive market for funeral services.

(State Defs.' Moving Br. 8, ECF No. 18-1.) As an initial matter, given these purported state interests, at this juncture, the Court need not determine whether the interest purported by Plaintiffs - economic protectionism - is a legitimate government interest. Regardless of the actual motivation for the Amendment, the Court need consider only the interests advanced by the State Defendants. *See also F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (stating on a rational basis review that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature").

With respect to the purported government interests asserted by the State Defendants, Plaintiffs argue that the Amendment is not a rational means of protecting consumers because: (1) the Amendment does not make private religious cemeteries subject to the Cemetery Act (Pls.' Opp'n Br. 20); and (2) the Amendment does not preclude religious cemeteries from selling outer covers for mausoleum spaces, which are the functional equivalent of headstones, or from continuing to sell burial plots and community mausoleums to consumers, which may cost as much as $40,000 as compared to the $1,000 cost of a headstone (*id.* at 20-21). Defendants urge the Court to summarily dismiss these challenges to the Amendment at the motion to dismiss stage. (State Defs.' Reply Br. 2, ECF No. 26; NJSFDA's Reply Br. 5-6, ECF No. 27.) The Court recognizes that those attacking the rationality of legislation bear a heavy burden that is often "insurmountable." *Am. Express Travel Related Servs. Co. Inc. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 575 (D.N.J. 2010). The Court is also mindful that in reviewing the rationality of the Amendment it is not entitled to "second-guess legislative choices or inquire into whether the stated motive actually motivated the legislation." *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014). Nonetheless, in light of the body of case law, which pertains to restrictions on the right to sell caskets, the Court finds that dismissal of Plaintiffs' Due Process Clause and Equal Protection

Clause claims is premature at this stage. *See, e.g., St. Joseph Abbey*, 712 F.3d 215, 227 (5th Cir. 2013); *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002); *Casket Royale, Inc.*, 124 F. Supp. 2d at 441; *Peachtree Caskets Direct, Inc. v. State Bd. of Funeral Serv. of Ga.*, No. 98-3084, 1999 WL 33651794, at *1 (N.D. Ga. Feb. 9, 1999); *Powers v. Harris*, 379 F.3d 1208, 1227 (10th Cir. 2004) (collectively "Casket Cases"). In particular, applying a rational basis level of scrutiny, a number of courts in other districts examined ***and rejected*** a state government's purported interest in requiring a license to sell caskets. *See, e.g., St. Joseph Abbey*, 712 F.3d at 227; *Craigmiles*, 312 F.3d at 229; *Casket Royale, Inc.*, 124 F. Supp. 2d at 441; *Peachtree Caskets Direct, Inc.*, 1999 WL 33651794, at *1; *see also Heffner*, 745 F.3d at 79 ("We have repeatedly warned that rational basis review is by no means 'toothless'- '[a] necessary corollary to and implication of rationality as a test is that there will be situations where proffered reasons are not rational.'"). In addition, in *Powers*, where the court found that a licensing requirement for the sale of caskets survived a rational basis challenge, the court did so only after trial. *Powers*, 379 F.3d at 1227 (finding that state licensing requirement for the sale of caskets did not violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment). Thus, Defendants have not cited a decision in which a court summarily denied, at the motion to dismiss stage, a challenge to the government's purported legitimate interest in restricting the entities that may sell caskets.

Here, rather than imposing a licensing requirement, the law at issue bars entities – namely religious cemetery owners – from selling monuments. Notwithstanding the distinction between imposing a licensing requirement as compared to barring an entity from selling a product, the Court finds the Fifth Circuit's description of the parameters of the rational basis review persuasive. As the Fifth Circuit recognized, "[a]lthough rational basis review places no affirmative evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis for the

law by adducing evidence of irrationality." *St. Joseph Abbey*, 712 F.3d at 223; *see also Santos v. City of Houston*, 852 F. Supp. 601, 607 (S.D. Tex. 1994) (stating that on a rational basis review "the presumption of constitutionality is rebuttable on a showing that the legislation . . . is arbitrary and unreasonable, having no substantial relationship to public health, safety, morals or general welfare").

Accordingly, at this juncture, the Court finds that it is premature to dismiss Plaintiff's Due Process Clause and Equal Protection Clause claims.

### B. Contracts Clause Claim

The Contracts Clause provides that "[n]o State shall . . . pass any. . . law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl.1. Notwithstanding its absolute terms, a state law violates the Contracts Clause only when it substantially impairs a contractual relationship. *See Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).

> If the court concludes that the challenged [legislation] works a substantial impairment, the court must then engage in a careful examination of "whether the law at issue has a legitimate and important public purpose." Finally, the court must consider "whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose."

*Sidamon-Eristoff*, 755 F. Supp. 2d at 576 (quoting *Transp. Workers Union of Am., Local 290 By and Through Fabio v. Se. Pa. Transp.*, 145 F.3d 619, 621 (3d Cir. 1998)).

In the Complaint, Plaintiffs allege that the Amendment violates the Contracts Clause because it makes it unlawful for the Archdiocese to honor its contractual obligations with respect to the six hundred inscription-rights contracts that predate the Amendment. (Compl. ¶¶ 241-44.) These obligations include the obligation to replace monuments that are damaged beyond repair. (*Id.*) In their motions to dismiss, Defendants argue that the Amendment does not violate the

Contracts Clause because the Amendment operates only prospectively, and thus is not applicable to preexisting inscription-rights contracts. (State Defs.' Moving Br. 23; NJSFDA's Moving Br. 18-19.) The Court agrees.

> [T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past. . . .The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature."

*United States. v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982) (quoting *Union Pac. R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199 (1913)). Here, the Court does not find that the Amendment "unequivocal[ly] and inflexibl[y]" manifests an intention to interfere with the rights of the six hundred preexisting inscription-rights contracts.[3] *Id.* Accordingly, the Court finds that Plaintiffs have failed to state a claim for a violation of the Contracts Clause.

## IV. Conclusion

For the reasons set forth above, and for other good cause shown, Defendants' motions to dismiss are granted with respect to Counts Three (Contracts Clause Claim) and Four (Privileges or Immunities Clause Claim), and Defendants' motions to dismiss are converted into motions for summary judgment with respect to Counts One (Due Process Clause Claim) and Two (Equal Protection Clause Claim) of the Complaint. Pursuant to the order accompanying this decision,

---

[3] Having found that Plaintiffs' allegations do not constitute a substantial impairment of their contractual relationships, the Court does not reach the question of whether Plaintiffs have alleged an absence of a legitimate public purpose with respect to the Contracts Clause claim.

9

the parties shall submit a proposed schedule for any necessary discovery, supplemental briefing, and oral argument on the motions for summary judgment.

/s/ Michael A. Shipp
Michael A. Shipp
United States District Judge

**Dated:** April 29th, 2016

10